**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DAVID MICHAEL MONTGOMERY,     *
# 412-797, SID # 2405284     *
    *
Plaintiff,     *
    *
v     *     Civil Action No. ELH-15-1345
    *
FRANK B BISHOP, JR.     *
ANNE MADDOX, Hearing Officer for WCI,     *
    *
Defendants.     *
    ***

## MEMORANDUM

David Michael Montgomery, a self-represented inmate in the Maryland Division of Correction, filed suit on May 11, 2015, under 42 U.S.C. § 1983, against Warden Frank Bishop, Jr.[1] and Hearing Officer Anne Maddox. ECF 1. Defendants have filed a motion to dismiss or, in the alternative, for summary judgment (ECF 6), as well as a legal memorandum (ECF 6-1) (collectively, "Motion"). They have also appended numerous exhibits to their Motion. No opposition to the Motion has been filed.[2]

The matter is ready for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' Motion (ECF 6), construed as a motion for summary judgment, will be GRANTED.

---

[1] Montgomery is presently an inmate at the Patuxent Institution. *See* http://www.dpscs.state.md.us/inmate/search.do?searchType=detail&id=320634. Bishop was the Warden of Western Correctional Institution at the time Montgomery filed this suit.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), Montgomery was notified in June 2015 of his right to file an opposition and supporting materials. ECF 7.

# I.    BACKGROUND

Montgomery complains that during the time he was housed at Western Correctional Institution ("WCI") in Cumberland, Maryland, he was deprived of a fair disciplinary hearing held on May 6, 2015, at which Maddox presided, in connection with an incident that occurred on April 14, 2015, while Montgomery was confined at the Jessup Correctional Institution ("JCI"). Maddox found Montgomery guilty of violating rules 104 (threatening language); 405 (disrespectful language); and 312 (interference with staff). She sanctioned him with 180 days of segregation and revoked 120 good history conduct credits based on a mandatory override for his poor history.

Generally, Montgomery asserts: 1) his rights under the Fourteenth Amendment were violated when he was transferred from JCI to WCI while a hearing on JCI rule violations was pending; 2) the hearing at WCI did not comport with due process; 3) he was found guilty of institutional rule violations, in contravention of the prisoner handbook; and 4) the hearing examiner was biased. ECF 1 at 3.[3]  According to Montgomery, his transfer from JCI to WCI prevented him from calling witnesses and obtaining representation at his hearing. *Id*. at 9, 11. He also faults Maddox for failing to address his claim of sexual assault by a correctional officer. *Id*. at 3.[4]

In addition, Montgomery disputes the sanctions he received.  He relies on the inmate handbook, which he states specifies qualification for the good category if 12 months have elapsed since the inmate's last violation, and the poor category based on possession of any

---

[3] Citations are to the page numbers assigned by the court's CM-ECF filing system, which do not necessarily correspond to the page number on a particular document.

[4] In his suit, Montgomery also complained about his transport to medical treatment and the medical treatment provided to him. *See* ECF 1.  These claims were dismissed on May 21, 2015.  *See* ECF 3, Memorandum; ECF 4, Order.

weapon or an article modified into a weapon within the previous three years. He asserts that the inmate handbook does not prevent an inmate from placement in the good category if previously found in violation of Rule 105 (possession of a weapon). *Id*. at 4.

Montgomery appealed the hearing examiner's determination at the institutional level and to the Inmate Grievance Office ("IGO"). Montgomery also appealed the hearing officer's decision to Warden Bishop, but complains that he received no response. *Id*. at 9.

As relief, Montgomery requests $20,000 in damages and dismissal of the "ticket" or rule violations. *Id*. at 8, 11.

## II.    Standard of Review

A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th. Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998). Conversely, a court may not convert a motion to dismiss to one for

summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448-49 (4th. Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise

adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrod*s, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the

Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id*. at 244-45 (internal citations omitted).

Montgomery has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment, because this will facilitate disposition of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*.,

290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Montgomery is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation,* 477 U.S. at 323–24)).

III.    Discussion

**A.  The Motion**

Defendants seek dismissal or judgment in their favor on several grounds: Eleventh Amendment immunity; failure to satisfy the minimum requirements to state a claim;[5] failure to exhaust administrative remedies; and qualified immunity.  ECF 6; ECF 6-1.  Defendants also filed with their Motion verified exhibits and declarations supporting their Motion. The exhibits include copies of Division of Correction Directive ("DCD") 105-4 (pre-hearing procedures); DCD 105-5 (rule violations); DCD 105-7 (formal hearing procedures); DCD 105-8 (adjustment history sentencing matrix and sanctions); Montgomery's notice of rule violation dated April 14, 2015; and the adjustment hearing report.  Additionally, defendants have filed declarations executed by Tennille Winters, WCI case manager, and Scott Oakley, Executive Director of the Inmate Grievance Office.  ECF 6-3 to 6-8.  As noted, Montgomery has not filed an opposition. Therefore, the exhibits are not disputed.

**B.  Defendants' Exhibits**

**1.    Notice of Infraction and Disciplinary Hearing**

On April 14, 2015, Corporal Olan Owolabi issued a Notice of Inmate Rule Violation to

---

[5] To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted).  The complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012). Rule 8(a)(2) demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  Montgomery's claims are supported by facts that, when accepted as true, satisfy this standard.  Therefore, his claims will not be dismissed on this ground.

Montgomery. ECF 6-7 at 11-12. It reflects that, during a strip search conducted that morning, Montgomery became "belligerent, disrespectful, [and] used vulgar and threatening language" toward Owolabi. *Id.* at 11. Montgomery said, "'fuck you i am not doing shit because i have a constitutional right and i'm not going on admin seg.'" *Id*. Montgomery also threatened: "'[i]'ll fuck yall up once i get on the compound.'" *Id.* He was charged with violations of Rules 405, 104, and 312.

Montgomery signed the notice to confirm its receipt. *Id*. at 13. The form (ECF 6-7 at 13) includes information as to the presentation of witnesses, evidence, and for representation. *Id.* However, Montgomery did not provide the name of a representative or a witness he wanted to call at the hearing. *Id*.

One week later, on April 21, 2015, Montgomery was transferred from JCI to WCI. *Id*. at 2. On May 6, 2015, Maddox conducted Montgomery's disciplinary hearing at WCI. The hearing record shows Montgomery did not request representation or witnesses. ECF 6-7 at 15. Montgomery does not allege that he requested representation or names of witnesses at the time he was served with the notice of rule infraction. Further, he does not claim his transfer prevented him from identifying a representative or witnesses. Nor does Montgomery indicate what testimony witnesses would have provided. The participants indicated they were prepared to proceed with the hearing. *Id*. at 16.

Montgomery's hearing statement was summarized in the hearing report as follows, ECF 6-7 at 16:

> On 4-14-15 Lt. Legrande came to my cell and said I was going on admin for writing the nurse a letter saying I want to lick her but, I walked over there to go on lock up and was strip search [sic] and no problem, and my rights were violated, there were 12 officers and just me in there. I told them I was suing this prison, and officer jumped up and said I don't have no fucking rights and he uncuffed me and if I threatened him he would not have uncuffed me, so I put my

shirt over my shoulder, and he thought I threw it so he picked it up and had me do it again, then he said take off shoes and sock and I did that, wiggle toes, I did that, then take off shorts, I did that, drop and cough and I did that, [r]un fingers through gum line I did that, told me separate your fingers from your balls I did that, then he hit me on the shoulder [sic] and he told me to squat and I did and then he smacked me on my ass, I wrote an ARP on it, there is an investigation, they are retaliating on me. I was working and earning good days, I never saw the letter. I did not threaten.

Maddox found, based on the evidence, that Montgomery was uncooperative and disrespectful during a strip search by stating he was not going on administrative segregation and that he would "fuck up" the officer when he saw him on the compound. *Id*. at 17. Maddox indicated she did not believe the notice was written as retaliation or with malice. *Id*.

Maddox sanctioned Montgomery with 180-days of segregation and revoked 120 good conduct credits for his violation of Rule 104 based on his poor adjustment history. *Id*. Montgomery also received 60 days of segregation for his violation of Rule 312, and 45 days for his violation of Rule 405, both terms to be served concurrent with the 180 days imposed. *Id*.

### 2. Division of Correction Directives ("DCD")

In Maryland, the Commissioner of Correction "may adopt regulations for the operation and maintenance of the units in the Division," which, among other things, "shall provide for the discipline and conduct of inmates, including the character of punishments for violations of discipline." Md. Code (2008 Repl. Vol., 2015 Supp.), Correctional Services Article ("C.S."), §3-205; *see also* Code of Maryland Regulations ("COMAR") 12.02.2701.

DCD 105-4 is titled "pre-hearing procedures," and DCD 105-7 is titled "Formal Hearing Procedures." *See* ECF 6-3; ECF 6-4. DCD 105-4 and DCD 105-7 set forth procedures for the orderly operation of a facility and the efficient administration of discipline. *See* ECF 6-3, § IV(A); Exhibit 2 at § IV(A). A Notice of Inmate Rule Violation and Disciplinary Hearing form shall be served on the inmate within one day of the rule violation. ECF 6-3, § V(C)(2). When

serving a Notice of Inmate Rule Violation and Disciplinary Hearing form on an inmate, staff shall advise the inmate that he may request a hearing representative and/or witness on the notice form. *Id*. at § V(C)(2)(d)(4). It is the responsibility of the inmate being served to read the notice form and attachments or notify the serving staff that he is unable to read or understand the documents, as well as list on the notice form the name of any representative requested, list on the notice form the names of any witnesses requested, and promptly return the completed notice form to the serving staff. *Id*. at §§ V(C)(2)(e)(1)-(5). An inmate's failure to request representation on the notice at the time of service shall be deemed a waiver of representation unless circumstances outside the control of the inmate prevented identification of a representative by name. ECF 6-4, § V(F)(2)(d). An inmate's timely failure to request a witness shall also be deemed a waiver unless circumstances outside his control prevented the identification of the witness by name. *Id*. at § V(F)(3)(h).

DCD 105-8 is titled "Adjustment History Sentencing Matrix and Sanctions." ECF 6-5. The "Policy" of DCD 105-8 is "to establish specific rule violations for the orderly operation and security of a facility, to deter inmate misconduct, and to establish uniformity in identifying and reporting inmate misconduct. *Id*. at § IV(B). Section V of DCD 105-8 states that, "[i]n an effort to achieve consistency of sanctions in regards to segregation periods, revocation of good conduct credits, and revocation of special project credits," a sentencing matrix was established that considers "the severity of a rule violation . . . determined by the category of offenses . . ." and an inmate's adjustment history. ECF 6-5, §§ V(A)(1)-(2).

### 3. Sanctions under the Sentencing Matrix

As indicated, inmates found guilty of institutional rule violations are sanctioned according to a sentencing matrix set forth in DCD 105-8, to achieve consistency of sanctions,

and based on the severity of the rule violation as determined by the category of the offense and the inmate's adjustment history.  ECF 6-5, §§V(A)(1)-(2)(a)-(b).

Adjustment history is categorized as either poor, fair, good, or violation free.  ECF 6-5, §§ V(A)(2)(c)(1)-(4).  Adjustment history is defined as poor "when the current rule violation is three months or less since the date of the last violation on record" or "when the current rule violation involves one of the listed violations and the inmate's previous violation record involves one or more of the listed violations within its qualifying time frame." *Id.* § V(A)(2)(c)(1).  The violations in this category include use of threatening language, *id.* § V(A)(2)(c)(1)(a) and possession of a weapon. *Id.,* § V(A)(2)(c)(1)(c) ("Possession of any weapon or an article modified into a weapon, the manufacture of a weapon, or the possession on any implement, article, or tool that reasonably could be used as a weapon, within the previous three years" is a qualifying violation); *see also* COMAR 12.02.27.35(L)(b)(ii).

When an inmate is found guilty of committing a Category I rule violation and has a poor adjustment history, the adjustment history sentencing matrix provides for revocation of between 120 and all good conduct credits, as well as imposition of 150-365 days of segregation.  *Id*. at 9.  Category I violations include rule violations 100-122.  ECF 6-6, DCD 105-5, Rule Violations, § V(A); *see also* COMAR § 12.02.27.37.

In Maryland, filing an appeal of a hearing officer's guilty decision or imposition of sanctions must be in writing to the Warden of the facility where the defendant inmate is housed, within 15 days of receipt of the hearing officer's decision. *See* COMAR 12 § 02.27.33(A)(1) and (2). An inmate may file an appeal of the Warden's affirmation of a hearing officer's decision or sanction to the IGO within 30 days of the date that the grievant received the Warden's final

response to the appeal, or the Warden's response to the appeal was due to the grievant. *See* COMAR 12 § 02.27.33(D); *see also* COMAR 12 § 07.01.05(C).

### 4. Montgomery's adjustment history

On February 14, 2014, Montgomery was issued a notice of rule violation for possession of a weapon or article modified into a weapon, a violation of Rule 105. ECF 6-7 at 28-30. On February 25, 2014, Montgomery was found guilty of violating Rule 105. *Id.* at 20-26. Montgomery's Complaint does not dispute his Rule 105 violation or sanctions.

Just two months later, Montgomery was issued the April 14, 2014 Notice of Rule Violation at issue here, and on May 6, 2014, he was found guilty of three enumerated violations, including use of threatening language (Rule 104). *See* ECF 6-5, §V(A)(2)(b) (stating that to determine an inmate's current matrix adjustment history, the hearing officer determines the number of months that have elapsed from the date of the last documented rule violation in conjunction with the date of the current rule violation).

Use of threatening language is a Category I violation. ECF 6-6 at 2, § V(A)). Consequently, Montgomery's adjustment history was determined as "poor."

### 5. Administrative Remedy Procedure Requests

On May 12, 2015, Montgomery filed Administrative Remedy Procedure ("ARP") request WCI 0788-15 containing numerous complaints, including that he was subjected to double jeopardy because he lost his kitchen job at JCI; could not earn good credit days; could not earn State pay; was transferred to WCI as punishment; was found guilty for something he did not do, was not receiving all his mail; and the Warden did not respond to his letters. ECF 6-7 at 5-6.[6]

---

[6] As discussed, *infra*, a prisoner may appeal a hearing officer's decision or sanctions to the Warden and the Inmate Grievance Office. *See* COMAR 12.02.27.33 and 12.07.01.05; *see also* ECF 6-7 at 19 (explanation of appeal from a hearing officer's decision). If the prisoner's

On May 12, 2015, the ARP was dismissed for procedural reasons pending resubmission because it contained multiple unrelated issues. *Id.* at 5. Montgomery was instructed to resubmit his ARP by May 27, 2015, and to include only one issue or a reasonable number of closely related issues. *Id.* Montgomery failed to resubmit his ARP by May 27, 2015. *Id.*

On May 15, 2015, Montgomery submitted ARP-WCI-0801-15, in which he complained that he was moved from JCI to WCI on April 21, 2015, because of a PREA[7] investigation of the officer who issued the ticket; he had a pending ticket from JCI; Lieutenant Legrand told him he should not have been moved; and he was not able to have any witnesses or a representative at his hearing. *Id.* at 7-8. On May 18, 2015, the ARP was dismissed for procedural reasons pending resubmission of the complaint by June 2, 2015, with only one issue or a reasonable number of closely related issues. *Id.* at 7. Montgomery was instructed he must sign and date all pages of the complaint. *Id.*

On May 18, 2015, Montgomery submitted ARP-WCI-0809-15. He complained he was punished twice for a ticket because he was at JCI and was placed in lockup on April 14, 2015; lost his kitchen job; lost his right to earn good days; lost the State pay he could have received; and was moved from JCI pending his ticket when he did not do anything wrong. *Id.* at 9-10. He complained he was found guilty at WCI, not JCI, on May 6, 2015, and received 180 days lockup and lost 120 good conduct days. *Id.* at 10. Further, Montgomery complained he did not receive a fair hearing because he did not have a witness or a representative. *Id.* On May 18, 2015, the ARP was dismissed because inmates may not seek relief through the ARP regarding disciplinary

_____

appeal to the Warden is denied or no response is received, a grievance may be filed with the IGO. *See id.*

[7] The court shall assume this reference is to the Prison Rape Elimination Act, 42 U.S.C. §15601.

hearing procedures and decisions. *Id*. at 9.

Plaintiff has filed four grievances with the Inmate Grievance Office. ECF 6-8, Declaration of Scott Oakley. The grievance relevant to this case, IGO No. 20150709, was filed on April 22, 2015, and involved a complaint by plaintiff that he had received a "ticket" charging him with violating inmate rules 104 (threatening language), 312 (interference with staff), and 405 (disrespect/vulgar language). *Id*. at ¶ 3(d). This grievance was pending a response from Montgomery to a letter from the IGO dated June 2, 2015, requesting that Montgomery provide copies of the supporting documentation required by COMAR 12.07.01.04(B)(9)(b). *Id*.[8] A final decision had not been rendered on the grievance when defendants filed their Motion. *Id*.[9]

### C. Defenses

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). Immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees sued in their official capacities. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89,101–02 (1984); *see also Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that claims against a state employee for actions taken in an official capacity are tantamount to a claim against the state itself). However, the Eleventh Amendment does not bar suits in federal court seeking prospective injunctive relief from

---

[8] An appeal to the IGO from a disciplinary proceeding requires copies of the notice of inmate rule violation and disciplinary hearing, the hearing record, the appeal to the Warden, and the Warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

[9] Neither party has provided this Court with an update on the IGO's determination.

ongoing violations of federal law. *See Will*, 491 U.S. 58, 66, 70–71 & n.10 (1989); *Bland v. Roberts*, 730 F.3d 368, 389–91 (4th Cir. 2013); *see also Ex parte Young*, 209 U.S. 123 (1908).

Defendants' employer, the Maryland Department of Public Safety and Correctional Services ("DPSCS"), is a Maryland State agency. The State of Maryland has not waived its immunity from suit in federal court against State prison officials, including those working at WCI, which is a State institution. *See Clark v. Md. Dept. of Pub. Safety & Corr. Servs.,* 247 F. Supp. 2d 773, 775–76 (D. Md. 2003). Montgomery does not specify whether his claims are raised against defendants in their individual or official capacities or both. Therefore, all claims for damages against defendants in their official capacities are dismissed.

### 2. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense of non-exhaustion. They assert that Montgomery has failed to exhaust his claims at the IGO level because, when he filed the instant complaint on May 11, 2015, he had yet to receive a final administrative decision on IGO No. 20150709, the grievance he filed to dispute his April 14, 2014 rule violations. ECF 6-8 at 3, ¶ 3(d).

The Prisoner Litigation Reform Act provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses

16

"all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd,* 98 Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Of course, administrative remedies must be available to the prisoner in order for a defendant to assert failure to exhaust, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d

678, 684 (7th Cir. 2006). The Fourth Circuit addressed the meaning of "available" remedies in

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015).

The Maryland Department of Public Safety and Correctional Services has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." C.S. § 10-206(a); *see generally* C.S. §§ 10-201 *et seq*.; COMAR 12.07.01.01(B)(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).[10]

---

[10] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under

The inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the administrative grievance process provided by the Division of Correction to its prisoners. *See* COMAR 12.07.01.04. The prisoner must file an ARP with the Warden within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first knew of the incident or injury giving rise to the complaint, whichever date is later. COMAR 12.07.01.05A. Maryland's grievance filing procedures require the grievant to provide information concerning the situation or occurrence that is the subject of the grievance, including the name of the official or employee involved. *See* COMAR 12.07.01.04(A)(5)(a)-(d). If the grievance is denied, the prisoner has thirty calendar days to file an appeal to the Commissioner of Corrections. COMAR 12.07.01.05C; *Blake v. Ross*, 787 F.3d at 697. If this appeal is denied, the prisoner has thirty days in which to file an

---

contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

appeal to the Inmate Grievance Office.  *See* 12.07.01.05B; COMAR 12.07.01.03; *see also* C.S. § 10-206; § 10-210; *Blake v. Ross*, 787 F.3d at 697.[11]

Complaints are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06A.  If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

---

[11] A grievance about case management is at COMAR 12.07.01.04(B)(9)(c).

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, *supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). To be sure, "the exhaustion requirement is not absolute." *Blake*, 787 F.3d at 698. Nevertheless, there is no indication that Montgomery, a frequent litigator in this Court, was in some way confused by a "murky" inmate grievance process. *Id.* at 701.

If defendants show that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim. *See Jones*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Rather, the claim must be dismissed if plaintiff cannot show that he has satisfied the administrative exhaustion requirement under the PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase*, 286 F. Supp. 2d at 528.

Here, defendants have raised the affirmative defense of failure to exhaust, have shown that the claim is subject to the ARP process, and that plaintiff failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). Montgomery neither disputes that he has failed to exhaust his administrative remedies regarding his claims, nor claims administrative remedies were unavailable to him. *See* ECF 1 at 2, § II.A.2. Thus, defendants are entitled to summary judgment.

Alternatively, even if Montgomery were to demonstrate exhaustion of his claims, defendants are entitled to summary judgment in their favor as a matter of law, for the reasons set forth below.

### D. Montgomery's Claims

Montgomery maintains his Fourteenth Amendment rights were violated when he was moved from JCI to WCI while a hearing on his JCI rule violations was pending. He claims the hearing at WCI did not comport with due process. In his view, Maddox was biased and found him guilty of violation of the prisoner handbook. ECF 1 at 3. He also faults Warden Bishop for not responding to his appeal of the hearing officer's decision. *Id*. at 9.

The basic due process standards applicable to a prison disciplinary proceeding are set forth in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As the Supreme Court explained in *Wolff*, although prisoners "may not be deprived of life, liberty, or property without due process of law," their due process rights remain "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id*. Accordingly, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.*

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, as here, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision-maker; (5) a written statement of the evidence relied on and the reasons for taking any disciplinary action. *See Wolff*, 418 U.S. at 564-571. But, inmates are not entitled to a right of confrontation, nor are they guaranteed a right to counsel. *Id.* at 567-70. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th

22

Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. S*ee Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990).

Montgomery does not dispute that he was provided advance written notice of the charges against him, afforded the right to call witnesses and to present evidence, and given a written decision. When he was served notice at JCI, he did not request representation or ask to present witnesses. At the hearing, Montgomery did not complain that his transfer precluded him from calling witnesses or seeking a representative. Further, Montgomery does not state who he would have named as a representative or called as a witness, or how they would have changed the outcome of the disciplinary proceeding.

Montgomery also fails to provide facts to support his claim of bias. The hearing officer's calculation of Montgomery's sanctions was consistent with the sentencing matrix, his adjustment history, and the nature of the rule violation. Montgomery committed a Category I offense less than three years after he was issued a notice of rule violation for possession of a weapon or article modified into a weapon. The sanctions imposed accorded with the sentencing matrix. Montgomery's disappointment with the outcome of his hearing and the sanctions imposed are insufficient to support his conclusory allegation of bias.

In addition, Montgomery faults Maddox for not addressing his claim of sexual assault.

But, the issues before the hearing officer were limited to the institutional rule offenses set forth in the notice of rule violation. Montgomery acknowledges his sexual assault claim was under investigation.

Montgomery also claims he was denied due process because Warden Bishop did not respond to his appeal of the hearing officer's decision. If an appeal of an disciplinary hearing is denied or the Warden does not respond to the appeal, a prisoner may file a grievance with the IGO within thirty days of the date the Warden's final response was due. Bishop was not obligated to respond to Montgomery's appeal of the hearing officer's decision. Further, Montgomery appealed the disciplinary hearing decision by filing a grievance with the IGO. There was no abridgement of his right to due process.

Viewing the facts in the light most favorable to Montgomery, there are no genuine issues of material fact in dispute. Montgomery received the process to which he was due at his hearing.

## CONCLUSION

For all of these reasons, I shall grant defendants' motion for summary judgment. An Order follows.

November 24, 2015
Date

_____/s/_____
Ellen L. Hollander
United States District Judge